Thomas E. Beck, Esq. (SBN 81557)
**THE BECK LAW FIRM**
Post Office Box 101
Los Alamitos, California  90720
Telephone:  (562) 795-5835
Email: thebecklawfirm@gmail.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUN MARSHALL, ANGELIQUE CRAWFORD, IZABELLA MARSHALL, A MINOR BY HER GUARDIAN AD LITEM, ANGELIQUE CRAWFORD, SHAYLA MARSHALL, A MINOR BY HER GUARDIAN AD LITEM, ANGELIQUE CRAWFORD, <br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, DEPUTY AYUB MANJRA #531114, individually and as a peace officer, DEPUTY MICHAEL. PEREA # 602466, individually and as a peace officer, DOES 1-10,<br><br>Defendants. | No. 8:20-cv-00916-DOC-ADSx<br><br>**1st AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Violation of Civil Rights (42 U.S.C.  §1983)<br>2. *Monell* Claim (42 U.S.C. §1983)<br>3. Failure to Supervise (42 U.S.C. § 1983)<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION

1. Jurisdiction of this court is invoked under 28 U.S.C. §§ 1343, (1), (2), (3) and (4).  This action at law for money damages arises under Title 42 U.S.C. Section 1983 and the United States Constitution, the laws of the State of California and common law principles to redress a deprivation under color of state law of

rights, privileges and immunities secured to Plaintiffs by said statutes, and by the First, Fourth, and Fourteenth Amendments of the United States Constitution.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

2. At all times herein mentioned, Plaintiffs SHAUN MARSHALL and ANGELIQUE CRAWFORD, IZABELL MARSHALL AND SHAYLA MARSHALL were residents of the County of Orange, City of Tustin. SHAUN MARSHALL operated Curt's Wheel and Tire shop at 16448 Cortuna, City of Bellflower, County of Los Angeles. MARSHALL and CRAWFORD are the parents of minor children Izabella Marshall (6) and Shayla Marshall (1).

3. At all times herein mentioned, Defendants DEPUTY AYUB MANJRA #531114, individually and as a peace officer DEPUTY MICHAEL PEREA # 602466, individually and as a peace officer, DOES 1-10, inclusive and each of them, were employees of the County of Los Angeles and the Los Angeles County Sheriffs Department assigned to Lakewood Station Patrol.

4. Defendant COUNTY OF LOS ANGELES (hereinafter referred to as "CITY") is and at all times herein mentioned has been a public entity and an incorporated county duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COUNTY has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of Los Angeles County Sheriffs Department, (LASD) and particularly said Department's Field Services, Patrol, Internal Investigations and Training and Personnel Divisions and other operations and subdivisions presently unidentified to Plaintiffs, and their tactics, methods, practices, customs and usages related to internal investigations, personnel supervision and records maintenance, the use and deployment of dangerous weapons, the use of

1 force, and powers of arrest by its rank and file.

3     5.    Plaintiffs are informed and believe and thereon allege that each of the Defendants designated as a DOE is intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged. The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to Plaintiffs who therefore sues said Defendants by such fictitious names and will be added to this action as provided by California Code of Civil Procedure Section 484 and Federal Rule of Civil Procedure 15.

12     6.    Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well established and settled law.

16     7.    The incidents complained of began January 8, 2019 in the City of Bellflower, County of Los Angeles. While on his way to retrieve a tool from a neighboring shop to work on a customer's car at his own place of business, Plaintiff SHAUN MARSHALL was detained by Defendants MANJRA and PEREA, both working uniformed patrol in the City of Bellflower. Plaintiff cooperated and asked why he was being detained but neither defendant answered him. Defendants also detained another person, unknown to MARSHALL, Sammy Conteras, who was also walking southbound on the east sidewalk of Flora Vista Street ahead of MARSHALL. Contreras had just left Curt's Wheel and Tire shop as a passenger of a vehicle brought in for service. During the detention, Contreras admitted he was in possession of methamphetamine which was removed from Contreras' pants pocket. Defendants searched a backpack Contreras wore and discovered additional contraband and burglary tools. Defendants asked MARSHALL if he knew who Contreras was.

MARSHALL replied he did not. Rather than release MARSHALL, who had committed no offense, MANJRA handcuffed MARSHALL, put him into defendants' patrol vehicle with Contreras and backed it up toward the entrance to Curt's Wheel & Tire. MANJRA spoke to MARSHALL while at the back door of the patrol vehicle but continued to refuse to explain to MARSHALL why MARSHALL was in cuffs, apparently arrested. MANJRA used his cell phone out of Plaintiff's hearing apparently summoning additional deputies to his location. Three patrol cars arrived. Manjra commiserated with them, also out of Plaintiff's hearing. These deputies entered Curt's parking lot and began searching vehicles parked within the lot. Approximately 10 minutes later, all deputies left, and MANJRA and PEREA took MARSHALL to Lakewood Station, continuing to refuse to tell MARSHALL why he was in custody. Instead, MANJRA stated "Take it like a G" which MARSHALL did not understand and neither MANJRA or PEREA explained. MANJRA asked MARSHALL if he knew Gary Bishop. MARSHALL replied he did and that MARSHALL had evicted Bishop, a former subtenant, for non payment of rent in the spring of 2018. MANJRA curiously informed MARSHALL he had arrested Bishop for drug sales.

8.   At Lakewood Station, MANJRA directed Plaintiff be booked for allegedly violating Health and Safety Code section 11377 which meant nothing to MARSHAL MARSHALL was locked up with Contreras whereupon Contreras admitted he was on probation and had meth on his person and burglary tools in his backpack. Plaintiff ANGELIQUE CRAWFORD was informed of MARSHALL's arrest and returned to the shop to lock it up and investigated how to bail him out. Ten Thousand dollars was posted for MARSHALL's release

9.   At approximately 11AM January 9, 2019, CRAWFORD, together with MARSHALL's customer whose key MANJRA booked to MARSHALL's property

4

arrived at Lakewood station to pick up MARSHALL. Upon MARSHALL's release he asked to speak to a watch commander to file a complaint against MANJRA for falsely arresting him. An unidentified Lakewood Station Watch Commander made Plaintiffs wait 45 minutes and then refused to take his complaint or to identify himself.  Plaintiffs persisted demanding to make a false arrest complaint. The unidentified Watch Commander left. He returned informing plaintiffs he had spoken to MANJRA about plaintiff's complaint and continued to refuse to accept any false arrest complaint.  Instead, this Watch Commander presented plaintiffs with a copy of MANJRA's 5 page crime and arrest report.

10. As Plaintiffs left Lakewood station, they read MANJRA's report and discovered MANJRA falsely claimed he and PEREA has witnessed a hand to hand drug sale transaction take place between MARSHALL and Contreras and that Contreras allegedly told MANJRA and PEREA he'd obtained the meth he has on his person from Plaintiff MARSHALL. Specifically, MANJRA wrote "As we drove east on Flora Vista St, we observed a male White (Suspect #1 Shaun Marshall) and a male Hispanic (Suspect #2 Samael (sic) Contreras standing behind a parked U-Haul vehcile talking. We observed S2/Contreras reach out and obtain an object from S1/Marshall. As we approached in our patrol vehicle both suspects looked up in our direction and we observed S1/Marshal place an item down on the bumper next to him. They began to walk quickly south on the east curb line of Cornuta Av away from 16488 Cornuta" MANJRA further falsely wrote MARSHALL said he was coming from "My House" and gestured to 16488 Cornuta Av."  Plaintiff MARSHALL resided in the City of Tustin and did not state or consider Curt's Wheel and Tire shop his house and never so stated. MANJRA falsely wrote that "I went back to where I observed the two suspects were engaged in a narcotics transaction (16488 Cornuta St). I observed a 'Marlboro' cigarette box on the bumper of the U-Haul box truck which S1/Marshall had set down. Inside the box was (1) clear plastic baggie

containing methamphetamine." Lastly, MANJRA falsely wrote that "based on the fact we observed S1/Marshall involved in a hand to hand narcotics transaction, the fact we recovered Methamphetamine from where he was standing, coupled with S2/Contreras' statement regarding acquiring Methamphetamine from S1/Marshall, we arrested him for Possession of a Controlled Substance for Sales (11378 HS)."

11. Plaintiffs were stunned and angered by what they read and knew to be false. They returned to Curt's Wheel and Tire shop and downloaded the shop's security surveillance camera DVR, confirming MARSHALL and Contreras were never together at the rear of a U-Haul box truck or anywhere else on the shop's lot; that Contreras left the premises before MARSHALL without stopping behind the U Haul truck and MARSHALL left separately to get the equipment he needed to work on a customer's car after CONTRERAS was gone; that the two at no time were standing together behind the U-Haul truck or that MARSHALL had placed anything on the vehicle's bumper. Plaintiffs further confirmed that MANJRA never retrieved anything from the back bumper of the U-Haul vehicle before leaving the scene.

12. After confirming and securing the DVR recording, Plaintiffs returned to Lakewood Station and again demanded to register a false arrest complaint against Deputy MANJRA. This time they were met by Watch Commander Lt. Stephen Moses #279983. Moses initially refused to take their false arrest complaint, but would complete a WCSCR #250606 which limited plaintiff's complaints to "improper detention, search or arrest" deliberately omitting "Criminal Conduct" and "dishonesty" and handed plaintiff's their green copy of the complaint form.  When plaintiffs discovered Moses had failed to specifically note "false arrest" while writing the plaintiffs complained of the provable lies MANJRA wrote in his report, Moses' sole response was to pencil into Plaintiff's green copy the word "falsely." On January 16, 2019 Acting Captain David J. Sprengel at the Lakewood Sheriffs Department

wrote a letter to Plaintiff MARSHALL, informing him his complaint "will be immediately reviewed by Sergeant Christopher Roberts and the results of the review will be conveyed to you upon its completion." At no time following January 16, 2019 has Sergeant Roberts or anyone else from LASD contacted plaintiffs or asked to see the surveillance video recording.  On information and belief, no investigation required by law and LASD policy was ever undertaken into Plaintiff's report of crimes having been committed by defendants MANJRA and PEREA. No LASD investigator, including Sgt. Roberts, ever interviewed Contreras concerning Plaintiff's complaint and no report of the results of said investigation have ever been communicated to Plaintiffs. Nor has Plaintiff's complaint been reported as required to the California Department of Justice. Plaintiff's report of felonious conduct by a member of LASD was buried to shield MANJRA and PEREA and avoid the ignominity of the department's employees wrongful behavior.

13. On January 10, 2019, Defendants' false and misleading police report was submitted by Lakewood Station Court Liaison and Investigating Officer Michael Garfin to the Bellflower District Attorneys office. Accepting and believing the facial validity of Defendants' report and being mislead by it, Deputy District Attorney Jessica A Bowlin filed criminal charges against Plaintiff MARSHALL alleging a violation of California Health and Safety Code § 11377 in case number 9BL00233. Plaintiff appeared for his arraignment on January 30, 2019 and pleaded not guilty, refused to waive time and insisted on a speedy trial confident his exculpatory video recording would prove his innocence.  A copy of the video recording was provided to the District Attorney who thereupon dismissed the case against MARSHALL on March 6, 2019 favorably terminating the criminal prosecution.

14. Employing his false drug crime accusation as against Plaintiff MARSHALL, defendant MANJRA presented his report to Deputy District Attorney

7

1  Georgina Ruiz. Based on MANJRA's deliberate misinformation, District Attorney
2  Ruiz wrote to Plaintiff's landlord at Curt's Wheel and Tire, Virgil De Vries, noting
3  MARSHALL'S drug arrest as the reason for De Vries' responsibility for the
4  "abatement of public safety concerns."  On January 24, 2019, citing MANJRA's
5  false and misleading crime report, along with MANJRA's arrest of MARSHALL's
6  former subtenant Gary Bishop after Bishop no longer had any connection with
7  Bishop, Deputy District Attorney Ruiz threatened Plaintiff's commercial landlord
8  with nuisance abatement legal proceedings including possible receivership. On
9  January 28, 2019 De Vries informed Ruiz MARSHALL's tenancy had been
10 terminated and was given until February 28, 2019 to clear out of 16448 Cortuna Ave,
11 Bellflower.  As the direct result of MANJRA's actions, Plaintiff MARSHALL was
12 forced out of business along with the losses of equipment, tools , customer goodwill
13 and became unemployed.

15.    By further reason of defendant MANJRA's false drug crime accusations,
and by MANJRA's reporting MARSHALL's arrest to County of Los Angeles,
Department of Children and Family Services (DCFS) which agency, relying on the
facial validity of MANJRA's false drug accusations, instituted proceedings in the
Superior Court under Case No. 19 CCJP01272 alleging Plaintiffs were unfit parents
to their minor children citing allegations that the parents and children allegedly
resided at 16488 Cortuna, that MARSHALL allegedly leased rooms at that location
to narcotics dealers and that Curt's Wheel and Tire "was known as a narcotics sales
location." By reason of Defendant MANJRA's false and misleading accusations
against MARSHALL, Plaintiffs SHAUN and ANGELIQUE were damaged by the
loss of custody of their daughters and were forced to undergo humiliating drug
testing, parenting education and the cost of defending themselves against MANJRA's
malicious accusations. At the same time, the minor plaintiffs relationship with their
parents was damaged, disrupted and interfered with by their placement into foster

care. Upon further investigation, DCFS and the Superior Court returned Plaintiff's children to them from foster care and visitations on November 6, 2019.

## FIRST CAUSE OF ACTION

**(VIOLATION OF CONSTITUTIONAL RIGHTS - UNREASONABLE SEARCHES & SEIZURES, FALSE IMPRISONMENT, DUE PROCESS DEPRIVATIONS, MALICIOUS PROSECUTION AND CONSPIRACY - 42 U.S.C. § 1983)**

**(By Plaintiffs Against All Individual Defendants)**

16. Plaintiffs refer to and re-plead each and every allegation contained in paragraphs 1 through 15 of this complaint, and by this reference incorporate the same herein and make each a part hereof.

17. This action at law for money damages arises under Title 42 U.S.C. § 1983 and the United States Constitution, the laws of the State of California and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiffs by said statutes, and by the First, Fourth, and Fourteenth Amendments of the United States Constitution.

18. Commencing at or about the aforementioned date and place, without lawful cause or justification, and while acting under color of law, Defendants DEPUTY AYUB MANJRA #531114, individually and as a peace officer and, DEPUTY C. PEREA # 602466 and DOES 1-10, and each of them, intentionally and maliciously deprived Plaintiffs of rights secured to them by the First, Fourth, and Fourteenth Amendments to the United States Constitution in that Defendants and each of them, subjected Plaintiffs to unlawful searches and seizures, a groundless criminal prosecution of Mr. MARSHALL, due process violations in the deception of

the Los Angeles District Attorney and the Superior Courts, long term separation of the minor plaintiffs from their parents and a cover-up conspiracy.

19. Defendants, and each of them, carried out and perpetrated the mutually supportive conspiracy to deprive Plaintiffs of their rights by participating in a corrupt effort to illegally seize, search, book, and fraudulently convict plaintiff MARSHALL on false drug charges manufactured, supported and promoted by defendants and to ruin Plaintiffs' business and damage their relationship with their minor children.

20. As a proximate result of the aforesaid acts and omissions of Defendants, and each of them, Plaintiffs sustained great physical and mental pain and shock to their nervous systems, fear, anxiety, torment, degradation and severe emotional distress.

21. By reason of the aforementioned acts and omissions of Defendants, and each of them, Plaintiffs incurred legal, medical and therapeutic expenses in an amount as proved.

22. In addition, by reason of the aforementioned acts and omissions of Defendants, and each of them, Plaintiffs were kept from attending to their usual occupations, and have suffered loss and impairment of earnings and employment opportunities all to their damage in an amount as proved.

23. By reason of the aforementioned acts of Defendants, and each of them, Plaintiffs were compelled to secure the services of an attorney at law to redress the wrongs hereinbefore mentioned and by virtue thereof, Plaintiffs are indebted and liable for attorneys fees.

24. The aforementioned acts and omissions of Defendants were committed by each of them knowingly, wilfully and maliciously, with the intent to harm, injure, vex, harass and oppress Plaintiffs with a conscious disregard of Plaintiffs constitutional rights and by reason thereof, Plaintiffs seek punitive and exemplary damages from Defendants, and each of them, (except Defendant COUNTY) in an amount as proved.

## SECOND CAUSE OF ACTION
## (UNLAWFUL CUSTOM AND PRACTICE UNDER SECTION 1983)
## (By Plaintiffs Against Defendant County)

25. Plaintiffs refer to and re-plead each and every allegation contained in paragraphs 1 through 24 of this complaint, and by this reference incorporate the same herein and make each a part hereof.

26. Defendant COUNTY is and at all times herein mentioned has been a public entity and an incorporated municipality duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COUNTY, possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the Los Angeles Sheriffs Department and its tactics, methods, practices, customs and usages related to narcotics investigations, internal investigations, personnel supervision and records maintenance.

27. At all times herein mentioned, Defendants, and each of them, were employees acting under the COUNTY direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the First, Fourth and Fourteenth Amendments respectively to the United States Constitution,

which customs, policies, practices and usages at all times herein mentioned required and encouraged the employment, deployment and retention of persons as peace officers who have demonstrated their corruption, frauds, dishonesty, bigotry, and numerous other serious abuses of their powers as peace officers in the employment of the COUNTY.

28. Defendant COUNTY knowingly maintains and permits official *sub-rosa* policies or customs of permitting the occurrence of the kinds of wrongs set forth above, by deliberate indifference to widespread police abuses, failing and refusing to impartially investigate, discipline or prosecute peace officers who commit acts of felonious dishonesty and crimes of violence, each ratified and approved by COUNTY and LASD.

29. The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by defendant COUNTY and LASD include, but are not limited to:

(1) Defendant COUNTY had knowledge, prior to and since this incident, of repeated allegations of abuse and dishonesty misconduct toward detainees and arrestees; Specifically, COUNTY and LASD knew Defendants MANJRA, PEREA and DOES 1-10, had in the past committed acts of police abuse, corruption, fraud and dishonesty;

(2) Defendant County and LASD had knowledge, prior to and since this incident, of similar allegations of abuse and dishonesty by Defendants, and refused to enforce established administrative procedures to insure the safety of detainees and arrestees;

(3) Defendant COUNTY refused to adequately discipline individual officers and employees found to have committed similar acts of abuse and misconduct;

(4) Defendant COUNTY refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by its peace officers;

(5) Defendant COUNTY and LASD reprimanded, threatened, intimidated, demoted and fired officers who broke from the code of silence and courageously reported acts of abuse and dishonesty by other officers;

(6) Defendant COUNTY covered up acts of misconduct, dishonesty and abuse by Los Angeles Sheriff Department employees and openly sanctioned a code of silence by and among officers;

(7) Defendant COUNTY rewarded officers who displayed aggressive and abusive behavior;

(8) Defendant COUNTY and LASD failed to adequately train and educate officers in the use of reasonable and proper force and failed to enforce the department's written regulations with respect to uses of force and regulations related to illegal, immoral and criminal misconduct;

(9) Defendant COUNTY and LASD failed to adequately supervise the actions of officers under their control and guidance.

(10) Defendant COUNTY and LASD condoned and participated in the practice of prosecuting known groundless criminal charges for the purpose of insulating the COUNTY, LASD and its officers from civil liability and reducing or dismissing criminal charges against individuals in return for release from civil liability;

(11) Defendant COUNTY and LASD condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct by its employees;

(12) Defendant COUNTY and LASD engaged in the practice and custom of withholding from criminal defendants, judges and prosecutors, exculpatory *Brady* evidence unfavorable to its officers in violation of law and the Constitution.

(13) Defendant COUNTY fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by January 8, 2019 and thereafter, represented the unconstitutional policies, practices and customs of the COUNTY.

30. By reason of the aforesaid policies, customs, practices and usages, plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution were violated.

## THIRD CAUSE OF ACTION
### (FAILURE TO TRAIN AND SUPERVISE)
**(By Plaintiffs Against Defendants DOE 1-10 in their individual capacities)**

31. Plaintiffs refer to and replead each and every allegation contained in paragraphs 1 through 30 of this complaint, and by this reference incorporate the same herein and make each a part hereof.

32. Defendants DOES 1-10 are sued in their individual capacities. Said defendants knew or reasonably should have known of their subordinates ongoing constitutional violations set forth above in the administration of the Field Services Division, Lakewood and Bellflower Station patrol deputies, including MANJRA and PEREA. Specifically, defendants knew or should have known of repeated failures to properly investigate and discipline or prosecute deputies engaged in dishonest, immoral and criminal behavior which violated the constitutional rights of members

of the public, including Plaintiffs herein. Said failures to act to prevent constitutional misconduct by subordinates acquiesed, condoned and ratified the customs, practices and usages by subordinates.

33. Defendants, and each of them, are sued for their own culpable actions and omissions in the training, supervision and control of subordinates including watch commanders and first level supervision at Lakewood and Bellflower stations which actions demonstrated a reckless and callous indifference to the rights of persons such as plaintiffs. Said defendants' actions, inactions and deliberate indifference set into motion the ultimate harm caused to plaintiffs.

34. Plaintiff is informed and believes and thereon alleges that prior to the incident complained of herein, since at least 1992 DOES 1-10 and others charged with the administration of the Field Services Division knew or reasonably should have known that employees of the Los Angeles County Sheriffs Department committed similar acts of dereliction of duty, fraud, dishonesty and deliberate indifference to employee dishonesty and other serious forms of misconduct.

35. Plaintiffs are informed and believe and thereon alleges that prior to the incident complained of herein in January 8, 2019, and as early as 1992, DOES 1-10 and others charged with the administration of the Field Services Division failed to take corrective action to prevent the future deputy wrongdoing and dishonest misconduct which are the proximate cause of Plaintiffs damages.

36. As the result of the supervisory, management and executive Defendants DOES 1-10's actions and omissions, amounted to the institutional repudiation of constitutional protections which became the moving force behind the damages done to Plaintiffs.

# PRAYER

WHEREFORE, Plaintiffs pray judgment against Defendants and each of them, as follows:

AS TO EACH CAUSE OF ACTION AS APPLICABLE

1. For General damages according to proof;
2. For Special damages according to proof;
3. For Punitive damages as provided by law, in an amount to be proved against each individual Defendant;
4. For attorney's fees pursuant to 42 U.S.C § 1988;
5. For Costs of suit;
6. For such other and further relief as the Court may deem proper.

DATED:   November 17, 2020          **THE BECK LAW FIRM**

By_____
    Thomas E. Beck
    Attorneys for Plaintiffs

# PLAINTIFFS' JURY DEMAND

Plaintiffs hereby demand trial by jury.

DATED: November 17, 2020            **THE BECK LAW FIRM**

By_____
    Thomas E. Beck
    Attorneys for Plaintiffs