# EXHIBIT A
# EXEMPLAR LARCIS REPORT

| URN | PARTICIPANT FIRST NAME | PARTICIPANT LAST NAME | TYPE | CRIMINAL CHARGE | VICTIM EMPLOYEE NUMBER | VICTIM FIRST NAME | VICTIM LAST NAME |
|---|---|---|---|---|---|---|---|
| 101-01629-0980-145 | CHON | CASTILLO | W | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 101-01629-0980-145 | DEPUTY | BAILEY | W | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 101-01629-0980-145 | GREGORY | BOGHOSIAN | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 101-01629-0980-145 | SEBASTIAN | BUTLER | S | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | CAROLE | MOULTALT | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | CAROLE | MOULTALT | V | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | DANNY | RAY | W | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | DANNY | RAY | W | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | JAMES | OLECN | S | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | JAMES | OLECN | S | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | JAVIER | CHAVEZ | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | JAVIER | CHAVEZ | V | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | JENNIFER | CHIBA | S | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | JENNIFER | CHIBA | S | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | JON | DEWAAL | W | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | JON | DEWAAL | W | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | KEITH | CRENSHAW | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | KEITH | CRENSHAW | V | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | STEVEN | SMITH | S | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | STEVEN | SMITH | S | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | TIMOTHY | LE LOZ | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | TIMOTHY | LE LOZ | V | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | VANESSA | LAUB | S | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | VANESSA | LAUB | S | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | | BOGHOSIAN | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 102-08268-0980-145 | | BOGHOSIAN | V | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 103-01187-0980-145 | BASIL | PANATTU | S | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 103-01187-0980-145 | BASIL | PANATTU | S | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 103-01187-0980-145 | GREGORY | BOGHOSIAN | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 103-01187-0980-145 | GREGORY | BOGHOSIAN | V | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 103-01187-0980-145 | J | JAMES | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 103-01187-0980-145 | J | JAMES | V | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 103-01187-0980-145 | JAMES | WARREN | W | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 103-01187-0980-145 | JAMES | WARREN | W | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 103-04162-0980-145 | RAMON | CAMPOS | S | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 103-04162-0980-145 | VICENTE | VELASCO | S | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 103-04162-0980-145 | | OBS | I | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 103-04162-0980-145 | | OBS | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 401-02555-0980-145 | CESAR | PASSALACQUA | S | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 401-02555-0980-145 | DEPUTY | BOGHOSIAN | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 401-02555-0980-145 | DEPUTY | BOOG | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 401-02555-0980-145 | GEORGE | VASQUEZ | W | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 401-02555-0980-145 | JASON | VOKOBRADOVICH | W | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 401-02555-0980-145 | PAUL | SCAMALDO | W | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 401-02682-0980-145 | CLOUD | PEMBLE | V | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 401-02682-0980-145 | DANIEL | REUTTER | W | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 401-02682-0980-145 | GREGORY | BOGHOSIAN | V | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |

| URN | PARTICIPANT FIRST NAME | PARTICIPANT LAST NAME | TYPE | CRIMINAL CHARGE | VICTIM EMPLOYEE NUMBER | VICTIM FIRST NAME | VICTIM LAST NAME |
|-----|-----|-----|-----|-----|-----|-----|-----|
| 401-02682-0980-145 | JESS | OSIER | W | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 401-02682-0980-145 | RACHEL | GRIGGS | W | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 401-02682-0980-145 | TOMMY | CRINER | S | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 403-02221-0980-145 | GREGORY | BOGHOSIAN | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 403-02221-0980-145 | KEITH | CRENSHAW | I | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 403-02221-0980-145 | ROBERTO | MARTINEZ | S | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 403-02221-0980-145 | | VICTIM | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 403-05191-0980-145 | TERRELL | SHERRILLS | S | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 403-05191-0980-145 | TERRELL | SHERRILLS | S | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 403-05191-0980-145 | TONY | GUILLEN | W | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 403-05191-0980-145 | TONY | GUILLEN | W | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 403-05191-0980-145 | | BOGHOSIAN | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 403-05191-0980-145 | | BOGHOSIAN | V | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 403-05191-0980-145 | | VELAZQUEZ | V | 148(A)(1)PC | 196168 | GREGORY | BOGHOSIAN |
| 403-05191-0980-145 | | VELAZQUEZ | V | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 406-02433-0980-145 | ALAN | LIMON | S | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 406-02433-0980-145 | | BOGHOSIAN | V | 243(B)PC | 196168 | GREGORY | BOGHOSIAN |
| 403-02221-0980-145 | GREGORY | BOGHOSIAN | V | 148(A)(1)PC | 407699 | TERESA | ACEVEDO |
| 403-02221-0980-145 | KEITH | CRENSHAW | I | 148(A)(1)PC | 407699 | TERESA | ACEVEDO |
| 403-02221-0980-145 | ROBERTO | MARTINEZ | S | 148(A)(1)PC | 407699 | TERESA | ACEVEDO |
| 403-02221-0980-145 | | VICTIM | V | 148(A)(1)PC | 407699 | TERESA | ACEVEDO |

# EXHIBIT B
# 12-13-20 CDLR MEET AND CONFER
# COMPLIANCE INVITATION

THE
# BECK LAW FIRM

THOMAS E. BECK

POST OFFICE BOX 101
Los Alamitos, CA 90720
Tel: (562) 795-5835

thebecklawfirm@gmail.com

December 12, 2020

Tomas A Gutierrez, Esq.
Chandler A. Parker, Esq.
COLLINS, COLLINS, MUIR + Stewart LLP
1100 El Centro St.
South Pasadena, CA 91030

**BY EMAIL ONLY**: tguterres@ccmslaw.com
cparker@ccmslaw.com

Re: *Marshall & Crawford v. County of Los Angeles, **et. al.***
8:20-cv-00916-DOC-ADSx
DOI: 1/8/19
Meet & Confer re Defendants Discovery Responses

Dear Counsel,

I am in receipt of defendants' verified responses and objections to plaintiffs inspection demands to the County Set 1 as well as Deputy Manjra's responses to our special interrogatories.. We received your objections December 11, 2020. This letter is pursuant to Local Rule 37-1.[1]

The specific concerns related to Deputy Manjra' rog responses are as follows:

Manjra #13 did not respond to the part of the rog that asked for promotions and limited the answer to negative appraisal of his employment. Please provide a

---

[1] Local Rule 37-1 provides in relevant part:

Prior to the filing of any motion relating to discovery..., counsel for the parties shall confer in good faith effort *to eliminate the necessity for hearing the motion* or *to eliminate as many of the disputes as possible*...The moving party's (meet-and-confer) letter *shall identify* each issue and/or discovery request in dispute, *shall state*...the moving party's position (*and provide*...legal authority which the moving party believes is dispositive of the dispute as to the issue/request, and *specify* the terms of the discovery order to be sought. (Emphasis added).

further, complete response that takes into account positive accolades related to his employment.

The specific concerns related to the objections made to Plaintiff's Inspection Demands, Set 1 are as follows:

### No. 1 re Manjra's  PPI/PRMS as specifically delineated.
### No. 2 re Perea's PPI/PMRS as specifically delineated

Objection is made to overbreadth and that by reason of overbreadth, the discovery request is argued to "seek information about incidents which are wholly unrelated to the factual allegations in the complaint" citing *K.C.R. v. COLA* 2014 WL 12725470. The cite you provided reveals that Galipo asked for "'all writings'in Deputy Silva's PPI index" which MJ Segal determined could be construed as a request for *any* type of information in the entire (PPI) index, whether or not it is related to the claims and defenses in the action, made it overbroad. My inspection demand does not take Dale's route as I specifically tailored the disclosures to those related to the issues in this case, e.g. "specifically related to failures to follow and abide by department policy, regulations or laws, false arrests, falsification of records, false accusations of crimes, false testimony and willful misrepresentations including all entries reflecting on Deputy Manjra's and Deputy Perea's  character trait for honesty or its opposite and each negative/adverse interactions with civilians."

### Overbroad, vague, ambiguous, compound, calls for speculation, unduly burdensome and oppressive.

All grounds for objections must be stated with specificity. *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D. Cal. 2005). *See, Davis v. Fendler*, 650 F. 2d. 1154, 1160 (9th Cir.). A "general objection, including overly broad, burdensome or oppressive, will not alone constitute a successful objection to an interrogatory, nor will the objection fulfill the objecting party's burden to explain its objections." *Id*. (Internal citation omitted).

On that score, a further response to #1 and #2 is warranted without further objection.

Additional privilege objections were lodged, specifically "law enforcement records which are confidential under California law and are protected by the law enforcement privilege, official information privilege, and the self-critical analysis privilege.

Initially, federal privilege objections require that you serve with the responses a custodian's *Chism* declaration and a privilege log. See *ARS v COLA, supra*, *3. The County's objections were not properly supported and that failure has been treated as a waiver of the privileges asserted. . *Burlington Northern &*

December 12, 2020
Page 3

*Santa Fe Ry. Co. v. District Court* 408 F.3d 1142, (9th Cir. 2005), *Ramirez v. County of Los Angeles* (C.D. Cal. 2005) 231 F.R.D. 407, 410–411:

> The party who withholds discovery materials must provide sufficient information (*i.e.,* a privilege log) to enable the other party to evaluate the applicability of the privilege or protection. *Id.; see also Clarke v. Am. Commerce Nat'l Bank,* 974 F.2d 127, 129 (9th Cir.1992). Failure to provide sufficient information may constitute a waiver of the privilege. *See Eureka Fin. Corp. v. Hartford Accident & Indem. Co.,* 136 F.R.D. 179, 182-83 (E.D.Cal.1991) (a "blanket objection" to each document on the ground of attorney-client privilege with no further description is clearly insufficient); *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir.1984) (*per curiam* ), *cert. dismissed,* 469 U.S. 1199, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985) (attorney-client privilege waived when defendant did not make a timely and sufficient showing that the documents were protected by privilege).
>
> Here, defendants failed to follow the procedures set forth in *Kelly v. City of San Jose,* 114 F.R.D. 653 (N.D.Cal.1987) and *Miller v. Pancucci,* 141 F.R.D. 292 (C.D.Cal.1992) for invoking the official information privilege. In particular, they failed to submit a declaration or affidavit, under oath or penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration "*at the time it files and serves its response to the discovery request.*"1 *Miller,* 141 F.R.D. at 300; *Kelly,* 114 F.R.D. at 669 (emphasis added). The *Miller* and *Kelly* requirements "are required of those who seek to invoke the 'official information' privilege in federal question cases." *Miller,* 141 F.R.D. at 300. Defendants never submitted a declaration from a responsible official within the agency who has personal knowledge of the principal matter, and they submitted their privilege log only after plaintiff initiated the meet-and-confer process. As the *Miller* court stated, "should the threshold requirements not appear in the papers, the privilege assertion will be overruled in its entirety and complete disclosure will be ordered." *Id.* at 301.

### Protective Order

We have in place a court approved Protective Order [Doc 33 12/1/20] specifically designed to avert these kinds of privilege objections. My inspection demand pleading prominently displays an agreement to accept privileged and confidential discovery subject to that protective order. I have to ask why you

December 12, 2020
Page 4

ignored this agreement in responding to these inspection demands. You might
want to reconsider before we take up the magistrate's time.

## "Confidential under California law"

The first concern I have about these objections is that no specific code
section or decision has been cited to support this objection. As a general rule, as I
am certain you must know by now, California privilege law is irrelevant to this
action and it is not proper to withhold discovery on such objections. *K.C.R. v.
County of Los Angeles, supra*, at *2

Where, as here, "there are federal question claims and pendent state law
claims present, the federal law of privilege applies."3 Agster v. Maricopa
County, 422 F.3d 836, 839 (9th Cir. 2005); see also Fed. R. Civ. P. 501;
Wilcox v. Arpaio, 753 F.3d 872, 876 (9th Cir. 2014) ("Where ... the same
evidence relates to both federal and state law claims, 'we are not bound by
[state] law' on privilege. Rather, federal privilege law governs.") (quoting
Agster, 422 F.3d at 839).

"Federal law governs the parties' dispute. Despite defendant's repeated
assertions to the contrary, the law of California, the forum state, does not inform
federal privilege law." "The state privilege does not govern these proceedings."
*Jackson v. County of Sacramento*, 175 F.R.D. 653, 654-655 (E.D. Cal. 1997)
(citations omitted.)

## "Law Enforcement Privilege"

Does not exist/not recognized.

"As plaintiffs observe, the Ninth Circuit has not formally recognized a law
enforcement privilege in the context of discovery in a civil action." *Doe 1 v.
McAleenan*, No. 18-CV-02349-BLF(VKD), 2019 WL 4235344, at *2 (N.D. Cal.
Sept. 6, 2019). In *Roviaro v. United States*, 353 U.S. 53, 59 (1957), the Supreme
Court recognized a qualified privilege to withhold the identities of confidential
informants to "protect[ ] the public interest in effective law enforcement." *Ibid.*

As described by other courts, the law enforcement privilege protects against
disclosures that would reveal confidential sources, law enforcement
techniques, and the identities of witnesses and law enforcement personnel.

December 12, 2020
Page 5

> It also safeguards the privacy of those involved in a criminal investigation
> and otherwise prevents interference with a criminal investigation. *City of
> New York*, 607 F.3d at 940–41, 944, 948; *In re Sealed Case*, 856 F.2d at 27.
> The party asserting the privilege bears the burden of showing that the
> privilege applies. *City of New York*, 607 F.3d at 944. The privilege is
> qualified, not absolute, and must give way when the needs of a particular
> litigant for access to the information outweigh the public interest in non-
> disclosure. *Id.*; *In re Dep't of Homeland Sec.*, 459 F.3d at 569; *In re Sealed
> Case*, 856 F.2d at 272.
>
> *Doe 1 v. McAleenan*, No. 18-CV-02349-BLF(VKD), 2019 WL 4235344, at
> *2 (N.D. Cal. Sept. 6, 2019)

In jurisdictions that tacitly recognize a law enforcement privilege, the
concern arises with *public* disclosure of investigatory files. *United States v.
Winner*, 641 F.2d 825, 831 (10th Cir. 1981). The discovery in this case,
particularly that which we have agreed is subject to a protective order is not a
public disclosure until such time as the evidence is introduced at a public trial. We
are a long way from that.

The party claiming the privilege has the burden to establish its existence.
*Friedman v. Bache Hasley Stuart Shields, Inc*., 738 F.2d 1336, 1341 (D.C. Cir.
1984). In order to assert the law enforcement investigatory privilege, certain
elements must be met: (1) a formal claim of privilege by the head of the
department with control over the requested information; (2) the assertion of the
privilege must be based on personal consideration by that official; and (3) the
information for which the privilege is claimed must be specified with an
explanation as to why it falls within the scope of the privilege. *U.S. ex rel
Burroughs v. DeNardi Corp*., 167 F.R.D. 680, 687 (S.D. Cal. 1996); see also
*Torres v. Goddard*, No. CV 06–2482–PHX–SMM, 2010 WL 3023272, at *8 (D.
Ariz. July 30, 2010) (finding party opposing disclosure failed to satisfy burden to
show law enforcement investigatory privilege did not prevent discovery of
materials discussing "police operational strategies, undercover programs, and
targets of criminal investigations").

Again, the absence of a competent *Chism* declaration and a privilege log
make it impossible to tell if there is any legitimate basis for the invocation of this
objection throughout the responses. It is not enough to recite that there are
ongoing internal adminstrative and criminal investigations pending, particularly as

December 12, 2020
Page 6

to Manjra's historical record. More curious is your directing me to *Shelley v County of San Joaquin*. 2015 WL 2082370 in support of the pendency of investigations arguments. My reading of *Shelley* supports disclosure, not the opposite. In that case there was a pending criminal investigation that did not implicate any of the named law enforcement defendants as in this case. In fact, the county had entered a stipulated protective order and produced documents that related directly to the pending investigation agreeing it was relevant and discoverable. The plaintiffs moved to modify the protective order to authorize public release of some of that evidence for unsaid reasons, and the court denied the motion because it found *public disclosure*, based on a declaration of a Sheriffs Department official, substantiated plausible harm. *Id*., p. *3. How this helps you is mystifying. The evidence I am seeking by these inspection demands would come to me under the terms of the protective order insuring no public disclosures would be made to disrupt either the administrative or criminal investigations.

## Federal Official Information Privilege

In *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033, the court characterized privacy rights in police personnel files as "official information," and held they were *not* shielded from discovery. Rather such materials are discoverable upon a showing of need and relevance. "In order to determine whether personnel files sought are privileged, courts must weigh potential benefits of disclosure against potential disadvantages; if the latter is greater, the official information privilege may bar discovery. " *Id.*, at 1033-34. "Such balancing should be conducted on a case by case basis, determining what weight each relevant consideration deserves in the fact-specific situation that is before the Court. This balancing test has been moderately preweighted in favor of disclosure." *Miller v. Pancucci, supra* at 300. Therefore, even if the subject files qualify as "official information" they are nonetheless discoverable because of their highly probative evidentiary value and subject matter relevance. *Hampton v. City of San Diego*, 147 F.R.D. 227 (S.D. Cal. 1993); *Chism v. County of San Bernardino*, 159 F.R.D. 531 (C.D. Cal. 1994).

In the final analysis, the absence of the requisite *Chism* custodian declaration and applicable privilege log as to what exists and what privilege is being specifically applied is fatal to these privilege objections. *Chism v. County of San Bernardino*. 159 F.R.D. 531 (C.D. Cal. 1994) requires the custodian personally review each responsive document and provide the appropriate basis supporting each objection. That has not happened. These objections interposed against Plaintiffs Inspection Demands are invalid and should be withdrawn.

December 12, 2020
Page 7

## Self Critical Analysis

Self critical analysis is not a privilege recognized in the 9th Circuit nor in California.

> UP's assertion of a self-critical analysis privilege is particularly questionable. This court has not recognized this novel privilege. *See, e.g., Dowling v. American Hawaii Cruises, Inc.,* 971 F.2d 423, 425-26 (9th Cir.1992). Nor were we able to discover any Oregon case law adopting, or even discussing, this supposed privilege. *Cf. Cloud v. Superior Court (Litton),* 50 Cal.App.4th 1552, 1558-60, 58 Cal.Rptr.2d 365 (Cal.Ct.App.1996) (concluding that California law does not recognize the self-critical analysis privilege). *Union Pacific R. Co. v. Mower* 219 F.3d 1069, 1076 (C.A.9 (Or.),2000)

In *Price v. County of San Diego*, 165 F.R.D. 614, (S.D. Cal. 1996), the court undertook an exhaustive survey of the Ninth Circuit's authorities and concluded the privilege is not recognized in this circuit. It specifically noted that in *Soto v. City of Concord*, 162 F.R.D. 603, 611 (N.D. Cal 1995), "the court declined to apply self critical analysis privilege to shield discovery of internal affairs investigatory documents and witness statements, finding no reason to believe that shielding the investigatory process from the public would lead to any increased candor by subject officers." *Id.*, at p. 619. This objection needs to be withdrawn and further responses provided.

### No. 3 seeks disclosure of the individual defendants historical criminal, adminstrative and citizen complaint investigation files.

You make overbreadth and and remoteness objections citing me *Lallemand v. County of Los Angeles*, No. CV 17-0781, 2018 WL 6136814, at *9 (C.D. Cal. Jan. 12, 2018). Once again I have to ask why you would do that. That court's ruling with specific respect to the temporal scope of a particular RFP was that "Plaintiff has not shown a need for ten years worth of materials to prosecute this case, and the failure to include a subject matter limitation would seemingly require production of documents, if any, that have little or nothing to do with the kinds of acts of which Plaintiff complains here." Id., p. *9. I will explain why there is a need in Manjra's case for a 10 year window. Manjra's recent rog response discloses he was hired "at the end of 2009" which tells me the 10 year window I applied to the response to this inspection demand is appropriate. Perea's employee number informs me he's even newer than Manjra so 10 years is probably beyond

December 12, 2020
Page 8

his time with the department. In either case, the 10 year window I set has been held to be perfectly reasonable, particularly when the defendants' dishonest character traits are central to the litigation. *U.S. v. Mehrmanesh*, 689 F.2d 822 (9th Cir. 1982)(evidence of the defendant's seven-year old hashish smuggling incident was admissible to prove knowledge in current heroin distribution case, especially with the proper limiting jury instruction). Thirteen years earlier than the incident in question has been judged not too remote. *United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989).
Rule of Evidence 609(b) expressly contemplates admissibility of "bad acts" and impeachment evidence beyond 10 years.

Ten years is also within the range of temporality and typical for the proof of systemic deliberate indifference to officer misconduct tending to prove a Monell claim. *Beck v. City of Pittsburgh*, 89 F.3rd 966 (3rd Cir. 1996), *Skibo v. New York City*, 109 F.R.D. 58 (E.D.N.Y. 1985).

Lastly, there is no validity to refusing to produce responsive documents on the ground that the complaints don't necessarily concern the very same misconduct visited upon the plaintiffs. That theory was repudiated in CA in 1981:

> Here, in contending Murray's testimony had little probative value, the People, like the trial court, emphasize the factual dissimilarities between the incident Murray witnessed and the Castain-Revak incident. This emphasis is misplaced. The true test of the probative value of evidence of this sort is not the degree of similarity between the two incidents but the extent to which the offered evidence tends to show the officer has used excessive force on another occasion.
>
> *People v. Castain* (1981) 122 Cal.App.3d 138, 142–143 [175 Cal.Rptr. 651, 653]

\

Courts also recognize that Monell liability predicated on turning a blind eye to all kinds of misconduct (as is alleged in this complaint) counts. *Urseth v. City of Dayton*, 110 F.R.D. 245 (S.D.Oh. 1986), *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987), *Skibo v. New York City*, 109 F.R.D. 58 (E.D.N.Y. 1985).

No. 5 requesting performance evaluations going back 5 years through the date of compliance for both defendant deputies.

No, 6  Training records pertaining to each of the individually named defendant deputies relating to law enforcement ethics, unlawful drugs

December 12, 2020
Page 9

identification and unlawful drugs investigations, including in-service training
records on these subject matters.

These inspection demands drew the identical boilerplate objections as I've
discussed above. They fail as to this inspection demand as they do for the earlier
ones. Plaintiffs require the evaluations and training records of both defendants
because their performance evaluations will establish the department ignores most
negative indicators that appear in the deputies PMRS/PPI when evaluating Manjra
and Perera and are not only not weighed into the performance evaluations but
actively eschewed. They prove there are two separate systems, designed never to
overlap. The negative information that appears in the PPI/PMRS reports, citizen
complaints and other such matters are *never* mentioned in the periodic evaluations.
These evaluations are necessary to prove it. The training records related to ethics
training and drug investigations key directly into the issues in this action.

These reports lead inexorably to additional evidence helping to prove the
municipal defendants consciously disregarded an obvious risk that Manjra and/or
Perea would inflict constitutional harm by lying about members of the public with
whom they came into contact.

Lastly I fail to understand how the pendency of administrative and criminal
investigations would get in the way of the disclosure of performance evaluations
as requested. I think it would be prudent to rethink these objections and get me
the responses under the protective order.

No. 7 asks for the deputy defendants' background investigations as required
by CA law and their PHS in particular.

This drew the identical thoughtless boilerplate objections as to the prior 6
inspection demands. The fail for the same reason they fail in the 6 earlier
inspection demands. These objections--particularly the pendency of the
administrative and criminal investigations-- make no sense at all. Maybe you can
explain when we discuss this what you might have been thinking to interpose
these objections to background investigation and PHS disclosures.

The absence of a privilege log or custodians declaration to support the
objections or provide some justification for the assertion should be self evident.
That lacuna warrants their being overruled: "In their objections, while Defendants
generally raised various privileges and personal privacy rights, they did not submit
a required privilege log (as discussed above) for the Court to ascertain application
of any privileges raised on a document by document basis. Accordingly,

December 12, 2020
Page 10

Defendants objections are overruled." *Herring v. Clark*, No. 1:05-CV-00079-LJO, 2011 WL 2433672, at *10 (E.D. Cal. June 14, 2011).

Furthermore, the relevance of their background investigations and their answers to their PHS questionnaires is inescapable. State law requires a thorough vetting of peace officers for employment and Monell liability is to be established by turning a blind eye to manifest unfitness. "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 411 (1997). See also, *Williams v. City and County of Denver*, 99 F.3d 1009, 1017 (10th Cir. 1996)(recounting the poor driving record of the defendant officer prior to employment where his reckless driving resulted in the death of the plaintiff's decedent).

These files will provide us the evidence Plaintiffs requires to prove their contention that LASD does not actually comply with California law (Govt. Code Sections 1031, subdivision (d) and 1030.1) as it relates to backgrounds and either does not do them at all for laterals transfers from other departments or turns a blind eye to disqualifications. I can't remember immediately the names of the deputies who came on board when LASD brought on County police officers, but what still stands out is how many of them had disqualifying criminal records a proper 1031 background investigation should have uncovered. LASD discovery in my past cases revealed lateral hires with criminal backgrounds got in, as were officers who were refused employment by multiple agencies, ignoring failed or untaken polygraph exams, proven false answers to intake questionnaires (PHS) and moral turpitude misconduct exposed in these documents made no difference to LASD. They were given employment and predictably behaved badly.

The City and its police department have a mandatory duty to conduct thorough background investigations of all its police officer employees. *California Government Code* § 1031(d). The purpose of the statutory requirement is to insure that police officers charged with insuring public safety are trustworthy and otherwise fit for these positions of trust. Plaintiff's discovery request is designed to prove LASD disregarded red flags raised during the requisite investigations and that the investigations disclosed information that should have disqualified the candidate and did not. It is another method of proving deliberate indifference in the hiring and retention of the defendant officers. The defendants' background investigation files are not out of reach by any of the objections being asserted,

December 12, 2020
Page 11

especially when the plaintiffs have agreed to take them subject to an protective
order for such records. Defendants' suitability to be peace officers, particularly as
it relates to character traits for dishonesty and corruption are relevant to the subject
matter in this lawsuit. Plaintiffs have no obvious explanation for why the
defendants would do what they did to them, particularly going so far to frame an
innocent person on a felony drug sales accusation. These answers will be disclosed
in Defendant's background investigation, together with their personnel complaints
(which should be reflected in the response to other discovery), which will provide
the information necessary to answer the question.

There is an affirmative duty by LASD to conduct a thorough background
investigation into each of these defendants. It is expected that the background
investigations relating to them will adduce additional proof of deliberate
indifference to demonstrated unfitness for public service, including material
misrepresentations to investigators, crimes of moral turpitude and dishonesty all of
which was ignored in the hiring process. These materials are relevant and in many
cases, directly admissible against the County. They should be disclosed subject to
a protective order.

## No, 8 asks for the investigations of the two cited WCSCR's the Plaintiffs received.

The responses to this item informs me nobody was paying attention and
boiler plate became the way someone thought to deal with this. I specified both
WCSCR investigations because they pertain directly to the case being litigated.
The plaintiffs were told in writing by the Lakewood Captain that that both
complaints would be promptly investigated and resolved, with notice coming to
them as required by statute. That started in February 2019 and to this day, we have
seen no outward appearance that investigations were actually being conducted in
response to both of these WCSCR's. The subject matter relevance is beyond
debate. Overbreadth and remoteness objections are indefensible. So is the
assertion that this request is overbroad in that it seeks information "wholly
unrelated to the factual allegations in the complaint." On the contrary, the FAC
and original complaints specifically alleged these complaints were made,
acknowledge and corruptly sat on. You will recall plaintiffs attempted to file a
false arrest complaint the day after Shaun's arrest with a Lakewood Watch
Commander who refused to take it and also refused to identify himself. The next
day plaintiffs attempted yet again to file a complaint and that watch commander
(Lt. Steven Moses) issued the second WCSCR but also refused to categorize it as a
false arrest, let alone a crime of dishonesty by the arresting deputies. A few days

December 12, 2020
Page 12

later the same captain at Lakewood wrote to the plaintiffs acknowledging their complaint and advised a particular sergeant would be investigating and that person never showed up either.

The closest your objections come to a recognizable mark is the contention that discovery is protected by the pendency of investigations. How would anyone know that as to either one of these WCSCR's? No custodian's declaration, no privilege log. That lacuna has its consequences. Note we specifically did not ask (yet) for the ICIB investigation pertaining to Shaun's arrest, booking and prosecution. I can conceive of no legitimate basis to suppress disclosure of the Plaintiff's complaints and the investigations into them. Even the more stringent CA discovery law on this subject expressly demands the complaining citizens are entitled to the investigations into those complaints in civil litigation arising from them. *Haggerty v. Superior Court (Guindzola)* (2004) 117 Cal.App.4th 1079, 1987. (See *Robinson v. Superior Court* (1978) 76 Cal.App.3d 968, 977 ([noting that the relevancy of an investigation of the incident that is the basis for the lawsuit is 'self-evident]".)

### No. 9 asked for Manjra's and Perera's previous 11377 and 11378 arrests and bookings.

You made the identical unthinking boilerplate objections to this request, You must understand we are looking to examine these reports to learn if there is another claim of having witnessed as hand to hand drug sale as was falsely made here. That amounts to potentially admissible modus operandi FRE 404(b) evidence and it is unassailably relevant to the plaintiffs' claims. The objections that disclosure to me of these reports would somehow prejudice an ongoing investigation escape me. Once again, had there been a *Chism* declaration or a privilege log, I might have some insight into why this specific discovery would in any way interfere with or prejudice the WCSCR investigations or the ICIB investigation.

Defendants have failed to provide the requisite *Chism* custodian's declaration nor have they supplied a privilege log as required. That failing waives any claim to the federal privileges being asserted here. *Miller v. Pancucci*, 141 F.R.D. 292, (C.D. Cal. 1992) or *Chism v. County of San Bernardino*, 159 F.R.D. 531 (C.D. Cal. 1994), *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990), *cert. den'd.* 502 U.S. 957, 112 S. Ct. 417 (1991).

These are run of the mill crime and arrest reports of a particular genre

December 12, 2020
Page 13

relevant to the Plaintiffs' claims. They are not privileged by California or federal
law from plaintiffs with a need in litigation. They are potentially proof of
recidivism, a key factor in assessing punitive damages if there are other victims such
as the plaintiffs.

As to the assertion that third party privacy rights prevent this disclosure, I
point out that this is protected data per my agreement. Neither the County nor the
deputy defendants have the right to stand on their former victim's privacy rights to
suppress proof that either deputy engaged in this same corrupt behavior before or
since 1/8/19.

It is well established that no one's privacy rights are paramount to the search
of truth in litigation under federal or California law, even if it implicates a third
persons privacy. *Burka v. New York City Police Department*, 115 F.R.D. 220, 225,
228-29 (S.D.N.Y. 1987) ordered discovery of thousands of internal investigation
files and arrest reports spanning more than 5 years so as to develop and support the
plaintiff's *Monell* claim. This necessarily meant third parties who had been
victimized by the department would be disclosed to the plaintiffs. Police abuse
victims typically do not want the department or its officers to hide behind their
privacy rights. Furthermore, the contention that disclosing the identities of third
parties who have been arrested on similar drug charges by the individual deputies to
plaintiffs in this litigation as potential 404(b) and Monell witnesses threatens
citizen complainants as well as well intended police officers from coming forward
was repudiated long ago.

In *Soto v City of Concord,* (N.D. Cal. 1995) 162 F.R.D. 603 Plaintiff sued for
violation of civil rights under 42 U.S.C. § 1983 against the City of Concord Police
Department and certain of its police officers. Plaintiff alleged that members of the
Concord Police Department, used excessive force while arresting him at his home
on February 28, 1993 for outstanding misdemeanor and traffic warrants. In granting
discovery over defendant's privacy objections, the court found that in the context of
the disclosure of police records:

> Federal courts should give "some weight" to privacy rights that are
> protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.
> However, these privacy interests must be balanced against the great
> weight afforded to federal law in civil rights cases against police
> departments. ".

While privacy rights have a legitimate place in litigation, it is axiomatic that
an individual's privacy rights are not paramount to the search of truth in litigation.

December 12, 2020
Page 14

"The constitutional provision does not prohibit all incursions into individual privacy, but provides that any such intervention must be justified by a compelling interest." *Alarcon v. Murphy*, (1988) 201 Cal.App. 3d 1, 5. "The constitutional right [of privacy] is by no means absolute. The state's interest in facilitating the ascertainment of truth in connection with legal proceedings is substantial enough to compel disclosure of a great variety of confidential materials . . .," *County of Alameda v. Superior Court*, (1987) 194 Cal.App.3d 254, 260. *El Dorado Savings & Loan Association v. Superior Court*, (1987) 190 Cal.App.3d, 342 holds the California *constitutional* right to privacy is not absolute, and will yield to the compelling state interest of facilitating the ascertainment of truth in connection with legal proceedings. See also, *Moskowitz v. Superior Court*, (1982) 137 Cal.App.3d 313, 316.

### No. 10 re Event Index/LARCIS reports

This request identified precisely which "stat codes" we are in need of and set the temporal scope at 7 years. It appears to me from the boilerplate response/objections, somebody did not even understand what this was seeking. There is nothing confidential or privileged about what is being sought and is the means to identify the subjects and arrests responsive to Request No. 9. I've received this discovery from LASD in past cases where the same legal point was being made—modus operandi proof admissible per FRE 404(b) and leading to evidence of recidivism in excessive force cases. That this case does not concern excessive force is immaterial. The objections need to be withdrawn and the documents should be produced subject to the protective order. If you need an exemplar of what this report looks like, I can supply it to you to show your clients what No. 10 is all about.

### No. 11 re audio or video recorded witness statements

The boiler plate remains the same. I won't get into another exposition as to why none of the objections apply so suffice it to say that if there are witness statements in possession of LASD relating to the allegations in the plaintiffs' lawsuit, including their complaints, we are entitled to them without objection. Your admission that statements responsive to this are being withheld--save for Plaintiff's, telephone call with someone at Lakewood station in February, 2019 which was provided--there needs to be a privilege log and Custodian's declaration which was due with the objections. Having failed in that regard, any plausible objections have been waived and disclosure needs to be made promptly.

December 12, 2020
Page 15

### No. 12 seeking each telephone call recording made from the Lakewood Station lockup by Plaintiff Shaun Marshall and co-arrestee Sam Contreras January 8-10, 2019.

The response to this raises a potential attorney client communication for the first time. However, how would anyone know a foundation for the privilege exists? There is no privilege log, and no Custodian's *Chism* declaration to support the objection. Moreover, I cannot tell whether the attorney client communication invocation pertains to Shaun or Conteras. Its possible Contreras may have reached out for legal assistance by phone while in custody at Lakewood on the dates identified, but I have my doubts. I know Shaun did not because the recordings were played for us in Downey on July 30, 2020 by Sgt. Melissa Ramirez. For that reason it is disingenuous to direct us to Global Tel Link in the response. LASD is clearly in possession of the identified recordings, and apparently had the means to access them for the purposes of the ICIB investigation. That means the County must produce the recordings in answer to this inspection demand.

The phrase "possession, custody or control" means that the party either has the document, has the legal right to obtain it, or has the practical ability to obtain the document. Klesch & Co. Ltd. v. Liberty Media Corp., 217 F.R.D. 517, 520 (D.Colo. 2003) and cases cited; Triple Five of Minnesota, Inc. v. Simon, 212 F.R.D. 523, 527 (D.Minn. 2002); see Comeau v. Rupp, 810 F. Supp. 1127, 1166 (D.Kan.) (requiring government agency to seek to obtain documents in possession of other agencies), reconsideration granted in part on other grounds, 810 F. Supp. 772 (D.Kan. 1992). In prison cases brought against officers or other lower level staff, official prison reports, policies, etc., are routinely produced, even though technically they may be in possession, custody, or control of the prison warden or clerk. In a few cases where defendants have made an issue of this, the courts have required the agencies or supervisors to provide the discovery. Cook v. City of New York, 578 F. Supp. 179, 184 (S.D.N.Y. 1984) (dismissed prison officials required to cooperate with discovery).

Furthermore, documents in the possession of a party's attorney may be required to be produced. *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994); *In re Ruppert*, 309 F.2d 97, 98 (6th Cir. 1962).

The invocation of the attorney client communication privilege as to this request is flawed. The fact is that there is no evidence of an attorney's participation in any of these recordings, the defense fails to establish the foundation for the privilege, this objection is spurious. The privilege objection should be withdrawn..

December 12, 2020
Page 16

> The attorney-client privilege protects "(1) communications (2) made in
> confidence (3) by the client (4) in the course of seeking legal advice (5)
> from a lawyer in his capacity as such, and applies only (6) when
> invoked by the client and (7) not waived." *United States v. Abrahams*,
> 905 F.2d 1276, 1283 (9th Cir. 1990).

The burden of demonstrating the existence of the attorney client privilege
clearly rests on the party asserting the privilege. *Id.* at 1283. "This privilege is to be
strictly construed." *United States v. Plached*, 913 F.2d 1375, 1379 (9th Cir. 1990).
To properly claim attorney client communication privilege, the claimant must
specifically designate and describe the documents claimed to be within the scope of
the privilege and to be reasonably precise in stating the reasons for preserving their
confidentiality. *United States v. Osborne*, 561 F.2d 1334, 1339 (9th Cir. 1977).
Objections, in such boilerplate terms as those stated in Defendants response, are
improper and therefore "no claim of privilege at all." *International Paper Co. v.
Fiberboard Corp.*, 63 F.R.D. 88, 94 (D.Del. 1974). *Miller v. Pancucci*, 141 FRD
292, 302 (CD Cal.1992).

*Griffith v. Davis*, 161 F.R.D. 687 (9th Cir. 1995) holds that a law enforcement
agency's administrative investigation by one of its employees is not protected by the
attorney-client privilege or the work product doctrine simply because an attorney
was involved in the investigation. "Davis cannot prevent disclosure of an
administrative investigation by having its litigation counsel (or agent of its litigation
counsel) conduct that investigation." Since the mere existence of a purported
attorney client relationship does not raise a presumption of confidentiality *P & B
Marina, Ltd Partnership v. Logrande*, 136 F.R.D. 50, 53 (E.D.N.Y. 1991), *Hearn v.
Ray*, 68 F.R.D. 574, 579 (E.D. Wash 1975), defendants' blanket claim that the
requested items are covered by these privileges is insufficient to support them.
Close scrutiny of the foundational supports for the attorney client privilege are
required because the privileges are not favored. The overriding principle is that
privilege impedes the full and free discovery of the truth and is "in derogation of the
public's right to every man's evidence." *X Corp v. Doe*, 805 F.Supp 1298, 1305
(E.D. Va 1992). Accordingly, courts narrowly construe the attorney client privilege,
and apply it only to those factual situations in which its purposes will be served.
*Costal States Gas Corp. v. Dept of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980);
*Misek-Falkoff v. IBM Corp.*, 144 F.R.D. 48, 49 (S.D. N.Y. 1992). Defendants'
Attorney Client communications privilege objection is completely without
foundation and is potentially

December 12, 2020
Page 17

sanctionable for having been made.

## No. 13 re video footage at Lakewood station and patrol vehicles

I see that the response is that none of these exist to be produced and don't
exist "due the lack of any reportable incidents which would trigger a preservation
duty under LASD policy." What was it about the plaintiffs complaint to the
unidentified Lakewood station watch commander that excuses the preservation
duty? We know there were two separate complaints made within days of the arrests
and that the plaintiffs returned to Lakewood station twice to report the misconduct. I
have to take issue with the assertion that no duty to preserve arose in light of these
undisputed events.

## No. 15 re 1/8/19-1/8/20 watch commander's logs, sergeant or supervisory reporting.

The response is puzzling to say the least and suggests to me that it is more
boiler plate. The comment "Plaintiff does not allege he was injured or otherwise
the subject of deputy misconduct while briefly incarcerated." is a non sequitor and
meaningless. Even if he had not been physically injured in the lockup, the reports
this request identifies pertain to his attempt to file a complaint.

Moreover, Shaun required watch commander approval for his booking on
1/8/19 and that is typically recorded on a watch commander's log for the watch on
which the arrest was made. I anticipate there was such a log and an entry by some
one approving the booking. Furthermore, there is that unidentified watch
commander whose name should show up in a watch commander's log reflecting Mr.
Marshall was attempting to make a personnel complaint upon his posting bail-an
obligation imposed on watch commanders by LASD. Keep in mind we have a cause
of action for failed supervision of Manjra and Perea. The events on the morning of
January 9th are evidence of that claim.

My many previous LASD cases educated me on the manner in which watch
commanders and supervisors are supposed to record complaints and take them in.
An arrest such as Shaun's would also be considered noteworthy in a watch
commander's log or sergeant's report because Curt's Wheel and Tire had been
(according to recent discovery disclosures) being monitored and surveilled by
Lakewood patrol personnel since at least February 2018.

December 12, 2020
Page 18

## No. 16 seeking In Service rosters at Lakewood Station 1/8/10-19/19

There was a partial response to this with a disclosure something was being withheld but nobody can tell what it is or why. That's again caused by the absence of a *Chism* declaration and privilege log. Furthermore, the contention that staffing on shifts on which are outside the time period alleged in the complaint tells me whomever prepared this objection had not read the complaint. We specifically identify Plaintiffs' return visit to Lakewood station on the afternoon of the 9th following their screening of their surveillance equipment. I need the in service with Lt. Moses' name on it to establish he was in fact the watch commander he claimed he was to the plaintiffs. If the withheld In Service relates to the contacts with Plaintiffs on the 9th, it was wrong to withhold it.

As to the In service you did send me for January 8th, I noted there is no entry for Unit 133J, which was what Manjra and Perea were operating as the day they met the plaintiff and Contreras. I'd like an explanation as to why the defendants don't show up in the In Service that pertains to the day and watch in question. I thought for a moment that the Bellflower substation may have had its own In Service but the one you sent accounts for Bellflower units.

## No. 17 seeking Unit 133J Deputy Daily Work Sheet for 1/8-1/9/19

This too has been met by objections that don't apply. As you may recall from reading the DA file, Manjra was in contact with DDA Ruiz on the 8th and the 9th of January and thereafter through May, 2010. Hence, discovery of Manjra DDWS for the 9th (assuming he was still 133J on the 9th-which is another reason to discover the withheld document. It's indubitably relevant and will likely lead to additional evidence.

No. 18 seeking DDWS for each deputy who responded to Curt's Wheel and Tire 1/8/19

The first thing I noticed the inspection demand omits Cornuta St, providing only the house number 16448 and the City. Did not seem to matter because what I meant was understood. The response is an objection that suggests the person who responded to this has not seen the surveillance video recording of the arrest wherein multiple deputies arrive, a little at a time to where Manjra and his partner are greeting them. This Inspection demand seeks to identify those deputies, one by one and put names to the images on the screen. To object on the grounds that "worksheets generated by unnamed parties in this litigation are not relevant and will

December 12, 2020
Page 19

not lead to the discovery of admissible evidence does not get it. Every one of those deputies who had contact with Manjra and Perea are ripe for their own interviews or depos concerning why they were there in the first place and what they learned when the arrived. As any viewer of the video recording can see, it was these deputies who entered the yard and starting searching the interior of the customer vehicles in the lot. Can't ask them why they did that without knowing who they are and confirming their presence from their DDWS.

The "potential" that the records we ask for will invade third party privacy rights is inadequate as an objection. Those third parties (if the objection was meant to refer to the deputies we are trying to identify) cannot properly be shielded from Plaintiff's discovery. As to the "may be protected by the official information privilege, law enforcement privilege or ongoing investigation privilege" fails for all the reasons I've articulated above. The prospect that a document "may" be protected is patently insufficient to withhold it.

The objections need to be withdrawn and further responses provided. .

### No. 19 seeking the defendants MDT traffic on the subject watch.

This has been met by the same boilerplate objections employed against most of these inspection demands. As I have pointed out, they are worthless from any standpoint and indefensible for the most part. The unspecified privileges that have been mentioned don't apply and without a *Chism* declaration and privilege log there is no way to tell me or the court what threat disclosure of these records woul realistically have on the pending investigations, administrative and criminal. LASD MDT message traffic has been disclosed to me in every one of my past cases because they are relevant and have proven to be useful to the development of the case for trial and additional discovery. You may remember the MDT message the world became aware of in the Rodney King debacle, referring to "Gorillas in the Midst" as the officers' view of Black citizens. Not saying I expect to get that kind of blockbuster out of our defendants' MDTs but one never knows until one has read them.

The objections should be withdrawn and further answers provided.

### No. 21 requesting LASD custody, housing, medical screening etc records pertaining to Shaun Marshall on 1/8-9/19

This request was only partially answered. Still missing are Shaun's and

December 12, 2020
Page 20

Contreras' booking jacket, which should contain his medical screening
questionnaire and his overnight housing together with the record of telephone calls
he made from Lakewood Station.

I noted too that certain responsive documents are being withheld but without
explaining what they are and why they are being withheld as is required defeats the
objections.

Kindly provide a complete further response to this this request.

### No. 25 seeking LASD's annual report to DOJ relating to citizen complaints

I don't understand what is meant by equally available. Nor do I understand
how "annual report" is vague and ambiguous. If you need a copy of what this report
looks like, or has looked like from LASD to DOJ, let me know. I have discovered
them in past cases without objection but none since 2016.

Pursuant to Central District Local Rule 37 our meet and confer must take
place as soon as practicable but not later than ten calendar days of your receipt of
this letter, i.e., December 24, 2020. I will be available to take up these issues by
phone or email. My direct line is 213 509-4549. Time is of the essence and I ask
that you be prepared to discuss the specifics of the issues in accordance with our
obligations under Rule 37. In the event we do not immediately reach agreement, I
will be serving you with plaintiffs portion of the Rule 37-2.2 joint stipulation
targeting the earliest possible motion hearing date.

These objections have thrown a roadblock into my discovery plan because I
cannot depose witnesses I don't know about contained in the materials and I
certainly cannot depose the individual defendant deputies without them.

Sincerely,

**THE BECK LAW FIRM**

Thomas E. Beck
teb/cl